So what is our final case for argument today? Which is United States v. Vincent Giattino. Case number is 2369, 18. Ok great, thank you. Oh, sorry, that's Judge Ballardos. Thank you. And counsel for Mr. Giattino, have you checked in with the clerk? I did not.  Good morning, Your Honor. John Ness is standing for appellant, Vincent Giattino. Good morning. Hang on one second, counsel. Let me just make sure we get the clock set and that I know it looks like you're reserving one minute for rebuttal. Is that right? I take one minute. All right, so you've reserved one minute. You may begin. Your Honor, I submitted an opening brief and a reply brief and I also did a Rule 20AJ letter. I would just like to briefly highlight some of the more salient issues. Mr. Giattino will be 72 in April, but he's a really, really old 71-year-old. There are young 71-year-olds and there's old 71-year-olds. He's a really, really, really old 71-year-old. He had no criminal history points when he was sentenced by Judge Raggi in 93. And my main argument, of course, is that she abused the court below, Judge Brody abused her discretion by not granting compassion and release and there they're not reducing his sentence. Now, the government submitted a 20AJ letter also on the same day I did, and they cite the new Fernandez case. But I will point out that Fernandez allows a district court to reduce the term of imprisonment if it finds extraordinary and compelling reasons warrant such a reduction. And I submit that's the situation here. Mr. Giattino is a totally changed man. And 3553, I think, is a great statute because it's a three-dimensional look at a man as opposed to the two-dimensional look at a man that the government always takes. Not always, I misspoke, sometimes takes. My first point that I'd like to talk about is a fundamental error, which I think leads to an abuse of discretion. And that's that Mr. Giattino was never a made man or member of the Bonanno or any crime family. Now, the government mistakes Mr. Giattino's relationship and it writes, quote, Giattino was an associate of BCF and the Lucchesi family, became a member of BCF in the early 1980s. That's not correct, your honors. The pre-sentence report, which your honors have, paragraph 16, FBI agents inform that Mr. Giattino was an associate of both the Bonanno crime family and the Lucchesi crime family. He was never a made member or a made man. What is an associate? And I've been representing alleged organized crime figures for 40 years in New York and New Jersey. In fact, I represented Al Greco, who was released on compassionate release two years ago by Judge Wiginton in New Jersey. She's a very tough judge. Very tough by the book, hardline judge. She released him on November 18th, two years ago, and he had been convicted. He was serving a 65 year RICO sentence. He served 33 years. And on a Friday, I got the decision and he was home on Monday, three days later. He's doing fantastic. He's been with his family for two years. So people do change. But what is an associate? I mean, am I an associate just because I represented alleged organized crime figures for 40 years? But that's not the problem. The problem is that they said he's a made man. And that's such a- Who's they here? The government? The government and the judge below, Judge Brody. They both said he's a made man. Judge Brody said, the government wrote in their brief, to your honors, in particular, the court, meaning Judge Brody, cited Giattino's two heinous murders using guns, equipment, and murder silencers, unquote, that he committed as a, quote, devout member of the Bonanno crime family, unquote, in determining that the section 3553A factors weighed against his release. All right. Sorry. Go ahead, Judge. I'm sorry. You go ahead. If that said instead, as a devout associate, would that- I mean, it feels to me like that sentence is more focused on the heinous murders than on the membership. Well, I just want to clear up, he's not a made member. I understand. That's what I'm saying. If that sentence said associate instead of member, we absolutely hear you saying that he's not a made man. My point is that that sentence that's drawn from the order, it talks about the heinous murders and then it uses the word member. Yes. Let's assume that that's an error. Yes. Yes. For the sake of argument, that it should have said associate. Now is that the error? Is that an error sufficient to- I don't know what was in the judge's mind, but even associate, to me, is meaningless. I don't understand that at all. But you understand what associate and member mean. If I know nothing about organized crime families, why is made man necessarily member? Why do those things go hand in glove as a matter of language and not without the extra knowledge you have? Because a made member is somebody who takes an oath to commit violent crimes to the rest of their life. I understand that. It's so bad. You know that. It's so bad. We might not. But this is what they said. He was. No, no. He took an oath. I understand that.  Why does member necessarily mean made man? I understand what you're saying, that made man is somebody who takes an oath and who's part of this organization. But why does member necessarily mean made man? That's the connotation that's given. Made guy is a made guy. Who says? Well, the government says. The made guy. I mean, they use that in pleadings all the time. Made member. I understand. I get the made member, but I don't understand how member necessarily equates with made man. I understand what a made man is. I get it. But I don't understand how member necessarily equates with that any more than associate or some other word might equate with it. With all due respect, your honors, I, again, my understanding is they are considered the same thing. A member of a crime family is different than an associate. Associates meaningless in my mind. But made guy, member, good fella, you know, all the club, they're all interchangeable. Got straightened out is, you know, I mean, this is what the government says all the time in indictments and pleadings. So counsel, let me point you then. So I'm looking at the judge's ruling where she says he committed two heinous murders using guns equipped with silencers and traffic narcotics as a devout member. It then cites for that CPSR paragraph 16 to 22. When I go to paragraph 16 of the PSR, it says FBI agents inform that Vincent Giottino was an associate. So she's she's equating. She's very clearly equating member and associate in her. That's the reference that she counsel. Yes. That's the reference she relies on. So why is it not a reasonable inference that she was accurately reporting? She just chose the word member. I don't know what was in her mind, but he was not a member. He didn't have his finger pricked from the ceremony. He didn't say, I take an oath to commit violent crimes, whatever you tell me to. That's a very bad thing. And again, I don't know what was in her mind, but what we do because she gave us the site. So we know it was in her mind. It was paragraph 16 to 22. Let me ask you this. One of the things that you do very well in your brief is cite other decisions by other judges to compassionately release folks. That's kind of a dangerous road to go down, isn't it? If my decisions as a district judge, whether to compassionately release someone, are going to hinge on what another judge did first, that might result in fewer people getting compassionately released in my court, perhaps, for that very reason. So isn't it a dangerous road to go down? I have to cite cases, Your Honor, and a case like Tommy Reynolds, which I cite in my 28J. He was a soldier in the banana crime family of La Cosa Nostra. He admitted committing numerous predicate racketeering acts, including several homicides, robberies, extortions, violent crimes. My argument is, Mr. Gentile's much better than him. And what I'm asking you is, aren't these cases supposed to be decided by district judges on a case-by-case basis, and isn't the fact that another judge might think that this guy's entitled to compassionate release shouldn't trigger a later judge saying that this guy is entitled to compassionate release any more than a judge first saying this person's not entitled to compassionate release should make me, when I get a very similar guy, say, no, he doesn't get compassionate release either because Judge so-and-so said he didn't get compassionate release. You're absolutely right, Your Honor. Every case is different, like snowflakes. There's no two of the same. But I have to make an argument. No, I understand. If I don't cite any cases, the government will say, there's no cases that ever released a guy like this. So I'm citing cases where the individuals were worse, as far as the government says. Number two, the plea offer. When he was age 37, more than 34 years ago, he was offered 10 years, and that was pre-guideline. So that was just three to four years. And that's in his attorney's affidavit that's at A-196. Bail was granted. Mr. Giottino was immediately granted bail with the government's consent, Your Honors. Again, how could he have been that dangerous a person at age 37 if they gave him bail and they gave him a 10, which you'd only do three or four years? And again, he said he's innocent. That's his position. Number four, the disparity. And I understand that the government's going to say, forget disparity. And I'm just, I rely on the brief. And cases come along every day that reverse other cases. And cases go up to the US Supreme Court, maybe in this case. So I'm just putting it on a record. There was a massive disparity in this case. Everybody's out except Thomas Patera, and that was a death penalty case. He's the only defendant from his case still incarcerated, with the exception of Patera. And his punishment was drastically different than his co-defendants. Everybody else got out. My fifth point, rehabilitation. Judge Brody did commend Mr. Giottino for his post-incarceration conduct, such as his mentorship to other inmates, his good conduct in prison, his ability to maintain strong and close relationships with his family, and his support network and reentry plan. And he is extremely remorseful. Number six, new information by Salvatore Grimano. And again, that's in the record. And I understand the government's going to say, with a new case, do a 2255. I understand that. And I'll move on to what's most important, his medical condition. In footnote two, the government concedes, quote, medical records from the BOP indicate that Giottino does have serious medical issues. They admit that. He respectfully submits that both the government and the district court undervalued the myriad of ailments that he has, which include asthma, which requires the use of an inhaler, high blood pressure, which requires prescription medication, lisinopril, diabetes type two, a heart condition, circulatory conditions, morbid obesity. All right, counsel, you're over your time. Do you want to wrap up or do you want to use your rebuttal? I'll use my rebuttal. And COVID is still going strong everywhere. I saw people yesterday, I was in court in Jersey, they were wearing masks, they had COVID. And he is certainly susceptible. I already talked about the Tommy Reynolds case, but I would like to just say, not only are his ailments very important, but his release plan, if in fact he is released. And I wish to cite the letter from his cousin, John Rauchy, dated January 22nd, 2026. It's in the record at 8246. He would not only provide a room with his family, and he would give him a job with his company. It's a legitimate company, electronic distribution business, Northstar Microelectronics. And that's very important. And in the end, this is his last chance. He's going to die in prison if your honors don't reverse. That's just the bottom line. And I would quote Portia in The Merchant of Venice, that the quality of mercy is not strain. It droppeth as the gentle rain from heaven upon the place beneath. It is twice blessed, blessed him that gives and him that takes. And I'm asking your honors not only bless Mr. Giottino, but your honors as well with mercy. Unless your honors have any questions. We have your argument. Thank you. I submit. We'll hear from the government, Ms. Pack. Thank you, your honors. May it please the court. My name is Stephanie Pack, and I represent the United States. The defendant Vincent Giottino is arguing that the district court abused its discretion in denying his motion for compassionate release and a sentence reduction. The defendant's arguing that the district court failed to appropriately consider several 3553A factors. First, your honors, I point out that United States versus Fernandez, which the defendant mentioned in his oral argument, does foreclose two of his arguments from the get-go. This court held in Fernandez that a sentencing disparity between a defendant and co-defendants who plead guilty does not constitute an extraordinary or compelling reason for compassionate release. And secondly, Fernandez also held that for challenging a sentence based on potential innocence or the potential value of new evidence, the vehicle to do so is not through a compassionate release motion, but through a habeas section 2255 motion. In other words, while the court can consider a variety of factors, if another statute circumvents the type of evidence that this court may consider, then it is circumvented, and that section 25 habeas route does exactly that. Now, turning to the section 3553A factors, your honors, the district court did, in fact, as explained over the span of three orders, consider the arguments that the defendant makes before you today and deemed release to be inappropriate upon a balancing of all of those factors. It acted well within its broad discretion to deny the defendant's motions for a compassionate release, and its decision should not be disturbed on appeal. To elaborate. One of the arguments that your friend makes is that there was a trial penalty imposed here, and you offered him 10 years, and he gets life plus 30 after he goes to trial. Is there any point where we should find that there's a trial penalty, that by going to trial, it's just so disparate, so different, the sentence that he gets, that it is, in effect, a penalty for exercising his right to go to trial? Yes, your honor, while this circuit has not recognized the concept of the trial penalty in an abstract, perhaps it would be more persuasive that there was a trial penalty if there were defendants who were charged with the same crimes similarly situated in the case in terms of their culpability, and the only difference is that one exercised his or her right to a trial, and that another took a guilty plea instead. Here, that's not what we have, your honor. In this case, I'll point to two of the co-defendants that the defendant focused on in this brief. Excuse me, but I think you're talking about disparity rather than trial penalty. Yes, your honor. You're comparing him with others, but why not compare him with himself prior to trial, being offered 10 years? Yes, your honor. With a sentence, basically, of life plus 30. Your honor, there is nothing unusual about the fact that what a defendant may be ultimately sentenced to after trial in which evidence is presented to both the presiding judge and jurors over what would probably be multiple crimes. I understand that, but the question I was trying to get at is does there come a point where it becomes a penalty for, I mean, you are from 10 years versus life plus 30, and that's just, there's a huge difference there. And the only thing in the government's mind, the government knew all the evidence before they offered him 10 years, and the only thing that changed was he went to trial. He exercised his right to go to trial. So isn't life plus 30 a penalty for going to trial? And isn't there a point at somewhere? So if he goes to trial and he gets 20 years versus 10 years, okay, I get it. But if a difference, isn't there some point at which an appellate court ought to find that there was a trial penalty imposed, and that that ought to factor into the analysis here? Perhaps in a certain scenario, it would be appropriate for this court to find that there was a trial penalty if that is the court's finding. However, again, the standard that this court should consider is the abuse of discretion and whether the district court took a holistic look at both prongs that need to be satisfied for the granting of a compassionate release motion, both prongs being, well, setting aside an administrative exhaustion, which the government is not fighting here. Was there, are there extraordinary and compelling circumstances? And on balance of the 3553A factors, is a sentence reduction or release warranted? And here, while Judge Brody did not reach the extraordinary and compelling analysis on the section 3553A factors alone, which as Your Honor, Judge Pallardo pointed out, consideration of a factor such as that can be taken into consideration by the district judge, but it is also not an abuse of discretion for the district judge to have considered other factors, such as the nature and circumstances of the crime that the defendant. Did Judge Brody address the trial penalty argument? She did not, Your Honor. Okay. But she did consider a variety of other section 3553A factors, such as the defendant's health, such as the defendant's rehabilitation. She did commend it, but even on balance, considering the crimes that the defendant was ultimately convicted of, found that the analysis did not favor release. And Your Honor, what the defendant essentially asking this court to do is what the law does not allow, to disagree with the district court's balancing of the section 3553A factors to substitute its own judgment and find that it rises to the level of an abuse of discretion. There is well-established precedent in this circuit court that declines to do so, and there is no reason that this case is any different from that. And even if this court were to find that one of the section 3553A factors was more persuasive than the district court gave credit for, Judge Raggi at sentencing and Judge Brody in reviewing these three motions are entitled to the weighing of the two murders in their analyses of this case. The gravity of the defendant's crimes remains the same then as it does now. One of those murders was of an FBI informant, strikes at the heart of the criminal justice system. And the other was also a murder in which the victim was lured, preyed upon by her status as a drug addict. These were simply assassinations, Your Honor. Eith honors, either murder alone would have made a life sentence acceptable and not outside the bounds of permissibility under the abuse of discretion standard. And here the defendant was convicted by a jury trial of both. Was the 10-year plea bargain based on a plea to fewer than all of the counts of which she was ultimately convicted? Unfortunately, Your Honor, the record is unclear as to the basis of that plea offer. Never mind, I'm not going to say that out loud. I'm looking at some of the other sentences given to some of the other people and thinking about the considerations that might have come into play in determining whether to make an offer, remembering that we rarely see 11C1C pleas. So the idea of a 10-year plea is unusual in federal court, right? We don't usually have determinate sentences pleas in federal court. But it sounds like you don't contest the idea that some plea was offered pre-trial in which Mr. Giottino could have expected his sentence to be no more than 10 years. The government doesn't contest that that is true? That's correct, Your Honor. Okay. Unless the court has any further questions, we request that the court affirm the district court's denial of the defendant's motions for a compassionate release and a sentence reduction and rely upon our brief for the remainder of the argument. All right. Thank you, counsel. That case will be submitted. That completes our calendar for the day. We'll reserve decision on all matters. Thanks to our court staff, in particular our courtroom deputy and our court security officer today. I'll ask the clerk to adjourn this session.